UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SYLVIA OLEN,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the Social<br>Security Administration,[1]<br><br>Defendant. | Civil Action No. 12-12424-JLT |

MEMORANDUM

May 7, 2014

YOUNG, J.

I.  Introduction

Sylvia Olen ("Olen") brings this suit pursuant to 42 U.S.C. § 405(g) seeking review of the Social Security Administration's ("Administration") denial of disability benefits. Presently at issue are Olen's Motion for Order Reversing Decision of the Commissioner [#14] and the Administration's Motion to Affirm the Commissioner's Decision [#16]. For the reasons set forth below, Olen's Motion for Order Reversing Decision of the Commissioner is DENIED and the Administration's Motion to Affirm the Commissioner's Decision is ALLOWED.

---

[1] Michael J. Astrue was the original defendant in this action. On February 14, 2013, Carolyn W. Colvin became the acting Commissioner. Accordingly, the named defendant in this action automatically changed that day. Fed. R. Civ. P. 25(d); see also 42 U.S.C. § 405(g).

II. Background

    A. Olen's General Background and Medical History

At the time the Administrative Law Judge ("hearing officer") in this case issued his decision, Olen was thirty years old[2] and had completed the tenth grade.[3] Olen had previously worked as a cashier at a fast food restaurant and as a telemarketer.[4] She claims that she became disabled on January 1, 2007 due to depression.[5] Olen experienced mood swings and did not like to "deal with other people or go outside much."[6]

Olen received mental health treatment from the Codman Square Health Center in Dorchester, Massachusetts.[7] Between August 2009 and April 2011, Olen obtained counseling from Lanre Adekeye, LMCH.[8] Olen also received medication management from Cynthia Medich, Ph.D., APRN and Dr. Orlando Lightfoot.[9] On September 18, 2009, Dr. Medich diagnosed Olen with the following: (1) major depressive disorder, recurrent, with suicidal ideation and one suicide attempt; (2) alcohol and marijuana abuse; and (3) mood lability, hypomanic episodes, violent.[10] Dr. Medich prescribed Olen Trazodone for sleep.[11]

---

[2] See Tr. 135 [#12-5].

[3] Tr. 157 [#12-6].

[4] Tr. 32–33, 70–71 [#12-2].

[5] Tr. 153–54 [#12-6].

[6] Tr. 153–54 [#12-6].

[7] See Tr. 780–806 [#12-14].

[8] See Tr. 780–833 [#12-14].

[9] Tr. 789–92, 797–99, 802 [#12-4].

[10] Tr. 802 [#12-14].

[11] Tr. 802 [#12-14].

2

On October 19, 2009, Olen reported to Adekeye that her sleep had been improving with the medication.[12]

Olen's attendance at her counseling sessions was sporadic and inconsistent.[13] Olen did not attend any therapy sessions between December 17, 2009 and September 11, 2010.[14] Olen also did not attend any therapy sessions between September 25, 2010 and January 6, 2011.[15]

B.     Procedural History

Olen filed an application for supplemental security income ("SSI") on July 8, 2009, claiming that she had been disabled since January 1, 2007.[16] Olen's SSI application was initially denied in November 2009 and again upon reconsideration in April 2010.[17] On April 19, 2010, Olen requested a hearing before a hearing officer,[18] and one was held on June 17, 2011 regarding the denial of Olen's application. Olen, represented by counsel, attended this hearing and testified.[19] An impartial medical expert and vocational expert also testified at the hearing.[20]

---

[12] Tr. 800–01 [#12-14].

[13] See Tr. 784, 788 [#12-14].

[14] Tr. 788 [#12-14]. Adkeye's notes on this point appear to contain a typographical error, stating that as of September 11, 2010, Olen's last visit had been on December 17, 2010.

[15] Tr. 784 [#12-14].

[16] Tr. 135 [#12-5].

[17] Tr. 77–78 [#12-2]; Tr. 83–85, 89–91 [#12-4]; Tr. 356 [#12-7].

[18] Tr. 92 [#12-4].

[19] Tr. 25–76 [#12-2].

[20] Tr. 25–76 [#12-2].

3

On July 26, 2011, the hearing officer found that Olen was not disabled and thus not entitled to SSI.[21] On August 4, 2011, Olen filed a request with the Appeals Council for review of the hearing officer's decision.[22] On October 26, 2012, the Appeals Council denied Olen's request for review, making the hearing officer's decision the final decision of the Commissioner of Social Security.[23] On December 31, 2012, Olen filed her Complaint seeking review of the Commissioner's decision. Olen filed her motion to reverse the Commissioner's decision on October 3, 2013 and the Administration filed its motion to affirm the Commissioner's decision on November 14, 2013.

C. State Agency Opinions

On November 19, 2009, Dr. Susan Witkie reviewed Olen's medical record.[24] Dr. Witkie found that Olen suffered from a mood disorder, an anxiety disorder, and substance abuse issues.[25] Dr. Witkie concluded that these conditions imposed moderate limitations on Olen's daily living activities, social functioning, and abilities to maintain concentration, persistence, and pace.[26] In her Functional Capacity Assessment, Dr. Witkie explained that Olen was able to: understand and recall simple information; sustain attention and pace at simple tasks for two-hour periods, eight hours per day, forty hours per week; relate adequately; and understand and respond

---

[21] Tr. 8–24 [#12-2].

[22] Tr. 5 [#12-2].

[23] Tr. 1–4 [#12-2].

[24] Tr. 306 [#12-7].

[25] Tr. 306, 309, 311 [#12-7].

[26] Tr. 316 [#12-7].

to change.[27] On April 13, 2010, reviewing psychologist Russell Phillips reviewed Olen's medical record and affirmed Dr. Witkie's opinions.[28]

    D.    <u>Testimony at the Hearing</u>

        1.    <u>Olen's Testimony</u>

Olen testified about her work history at the hearing. She testified that she had worked at Macy's, but was fired after only a few days because she yelled at a customer.[29] The hearing officer did not include this job in Olen's work history.[30] Olen further testified that she had previously worked between thirty and forty hours per week as a cashier at McDonald's and as a telemarketer.[31] She testified that she was fired from cashier positions at two different McDonald's restaurants, once because she was accused of stealing and a second time because she was giving sandwiches away to a homeless person.[32] Olen testified that she stopped working as a telemarketer because it was a temporary position.[33] Olen stated that she had not looked for work for several years because she does not like to leave her house and did not want to get out of bed.[34] She attributed this to depression, stating that she did not want to live anymore.[35]

---

[27] Tr. 322 [#12-7].

[28] Tr. 356 [#12-7].

[29] Tr. 31 [#12-2].

[30] Tr. 70–71 [#12-2].

[31] Tr. 32 [#12-2].

[32] Tr. 52 [#12-2].

[33] Tr. 53 [#12-2].

[34] Tr. 36 [#12-2].

[35] Tr. 36 [#12-2].

With respect to her medical issues, Olen testified that she had been suffering from depression for several years and had attended therapy to treat the condition.[36] She further testified that she was not taking medication to treat her depression because the doctor who had written her prescriptions was no longer available and she was waiting for a new doctor.[37]

Finally, Olen testified about her daily routine and living arrangement. Olen stated that she generally wakes up early, between 6:00 a.m. and 8:00 a.m.[38] She testified that she slept only two to three hours each night.[39] Olen explained that she spent most of the evening and early morning hours watching television when she was unable to sleep.[40] When asked whether she slept during the day when she was at home with nothing to do, Olen stated that she "sometimes" did.[41] Olen explained that after waking up, she lay in bed if she had no appointments.[42] Olen stated that she used public transportation to shop for groceries.[43] She further testified that she had taken public transportation to reach the hearing, though she stated that she had trouble with directions and had to make multiple phone calls on the way to the hearing.[44]

---

[36] Tr. 36 [#12-2].

[37] Tr. 36–37 [#12-2].

[38] Tr. 40 [#12-2].

[39] Tr. 47–48 [#12-2].

[40] Tr. 48 [#12-2].

[41] Tr. 47 [#12-2].

[42] Tr. 41 [#12-2].

[43] Tr. 41 [#12-2].

[44] Tr. 41, 44 [#12-2].

Olen testified that she had relationships with her aunts and several of her cousins.[45] She explained that she did not go anywhere with her aunts and cousins; instead, she just talked to them when she needed someone to talk to.[46] When asked why she felt she was unable to work, Olen explained that she simply had no motivation and was physically and emotionally drained.[47] Olen testified that she did not like to leave her house because she felt angry when she was outside.[48] She stated that she occasionally got into fights and had been in a fight with a male several months earlier.[49] Olen stated that some days she did not eat because she simply had no appetite.[50]

    2.    Medical Expert's Testimony

The medical expert testified that, based on Olen's medical record, a diagnosis of personality disorder best described her symptoms.[51] The medical expert explained that Olen was moody, angry, generally immature, and seemed to have some trouble with other people.[52] He further testified that Olen had a moderate restriction in activities of daily living, a marked restriction in maintaining appropriate social functioning, and, in his opinion, no restriction in her ability to maintain concentration, persistence, and pace.[53] The medical expert expressed

---

[45] Tr. 42–43 [#12-2].

[46] Tr. 43 [#12-2].

[47] Tr. 44 [#12-2].

[48] Tr. 44 [#12-2].

[49] Tr. 44 [#12-2].

[50] Tr. 46 [#12-2].

[51] Tr. 55–56 [#12-2].

[52] Tr. 55 [#12-2].

[53] Tr. 56–57 [#12-2].

uncertainty about whether Olen's limitations were due to her impairments or whether she was self-limiting.[54]

The medical expert explained that the major non-exertional limitation imposed by Olen's impairments was social in nature.[55] Based on that limitation, the medical expert advised that Olen would need to avoid working with the "broad general public."[56] He further advised that Olen would likely not deal well with coworkers or supervisors in a setting requiring significant interpersonal relating.[57] The medical expert was unsure whether Olen's social problems could be accommodated or limited by a work setting that limited her social interaction.[58] Finally, the medical expert explained that Olen did not need to avoid *all* interpersonal contact at work, but rather that it was important that she avoid teamwork and settings where interpersonal contact is an important part of the task.[59]

### 3. Vocational Expert's Testimony

The vocational expert first identified Olen's past relevant work experience. He identified Olen's position as a fast food worker, an unskilled job, and her position as a telemarketer, a semi-skilled job.[60] Next, the hearing officer asked the vocational expert to assume a hypothetical person existed who was of the same age, education, and work background as Olen and had the following work limitations:

---

[54] Tr. 57 [#12-2].

[55] Tr. 57–58 [#12-2].

[56] Tr. 58 [#12-2].

[57] Tr. 62–63 [#12-2].

[58] Tr. 63 [#12-2].

[59] Tr. 64 [#12-2].

[60] Tr. 72 [#12-2].

8

> This person would be able to relate to coworkers and supervisors only on a superficial interactional basis. This person would not be able to do work which required interpersonal contact with the coworkers and supervisors, and by that I mean that this person would be unable to do work that required teamwork or working together with the coworkers and supervisors as an integral part of performing the work activity required. This person would be unable to work with the broad general public. This . . . person would be able to maintain concentration, persistence, and pace for two-hour increments over a 40-hour work week . . . and the performance of simple, routine tasks being described and defined as four-to-five-step tasks. This person would be only able to deal with minor changes in the work place.[61]

The vocational expert was asked whether such an individual would be able to perform any work in the regional or national economy. He identified three occupations that such an individual could perform. First, he stated that such an individual could work as a janitor, a semi-skilled position.[62] Next, he testified that such an individual could work as a surveillance system monitor, an unskilled position.[63] Finally, the vocational expert testified that such an individual could be employed as an electronics worker, another unskilled position.[64]

Olen's attorney then asked the vocational expert to assume a hypothetical person with the characteristics described by the hearing officer. In addition, Olen's attorney asked him to assume the person "would experience a variable absentee rate of one day a week without anticipation."[65] The vocational expert testified that with this additional characteristic the hypothetical person would be unemployable in any job in the national economy.[66]

---

[61] Tr. 72–73 [#12-2].

[62] Tr. 73 [#12-2].

[63] Tr. 74 [#12-2].

[64] Tr. 74 [#12-2].

[65] Tr. 75 [#12-2].

[66] Tr. 75 [#12-2].

9

III. Analysis

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's findings are supported by substantial evidence.[67] Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"[68] Even in the presence of substantial evidence, however, a court may review conclusions of law[69] and invalidate findings of fact that are "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."[70] It is the responsibility of the Commissioner, rather than the reviewing court, "to determine issues of credibility and to draw inferences from the record evidence."[71] The Commissioner "has an obligation both to claimants and to reviewing courts to make full and detailed findings in support of his ultimate conclusion."[72] It is not necessary that this Court agree with the Commissioner's ultimate decision. This Court "must affirm the [Commissioner's decision], even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."[73]

---

[67] 42 U.S.C. § 405(g); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

[68] Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

[69] Slessinger v. Sec'y of Health & Human Servs., 835 F.2d 937, 939 (1st Cir. 1987) (citing Thompson v. Harris, 504 F. Supp. 653, 654 (D. Mass. 1980) (Caffrey, J.)).

[70] Nguyen, 172 F.3d at 35 (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam)).

[71] Irlanda Ortiz, 955 F.2d at 769.

[72] Small v. Califano, 565 F.2d 797, 801 (1st Cir. 1977).

[73] Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

In order to be entitled to Social Security benefits, a plaintiff must demonstrate that she is disabled within the meaning of the Social Security Act.[74] The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[75] A person qualifies as disabled if

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.[76]

The Commissioner uses a five-step evaluation process to determine whether an individual qualifies as disabled.[77] A hearing officer must determine sequentially (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals a listed impairment;[78] whether the claimant can perform past relevant work;[79] and (5) whether any jobs exist in the

---

[74] Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982).

[75] 42 U.S.C. § 423(d)(1)(A).

[76] Id. § 423(d)(2)(A); see also Deblois, 686 F.2d at 79.

[77] See 20 C.F.R. § 404.1520; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6–7 (1st Cir. 1982).

[78] The regulations contain a list of impairments that are disabling per se. See 20 C.F.R. § 404.1520(d).

[79] The regulations define "past relevant work" as work the claimant has "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." Id. § 404.1560(b)(1).

national economy that the claimant can perform given the claimant's residual functional capacity ("RFC"), age, education, and work experience.[80]

At each of the first four steps, the individual seeking disability benefits bears the burden of showing he or she is disabled.[81] If the claimant is able to establish that he or she can no longer perform his or her past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in substantial gainful activity.[82] If the Commissioner makes such a showing, the claimant is not disabled.[83]

Here, the hearing officer did not determine that Olen was disabled during the first four steps. At step five, the hearing officer determined that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."[84] Specifically, he concluded that Olen "would be able to perform the requirements of representative occupations," such as janitor, surveillance monitor, and electronics worker.[85] Olen assails the hearing officer's step-five conclusion on a number of grounds.

Olen's overarching argument is that the hearing officer erroneously failed to consider and apply Social Security Regulation 85-15[86] ("SSR 85-15") to her claim. The purpose of SSR 85-15 is to provide the hearing officer a framework for determining whether a claimant is able to

---

[80] Id. § 404.1520(a)(4)(i)–(v).

[81] See, e.g., Goodermote, 690 F.2d at 7.

[82] Rohrberg v. Apfel, 26 F. Supp. 2d 303, 306–07 (D. Mass. 1998) (Freedman, J.).

[83] See, e.g., Goodermote, 690 F.2d at 7.

[84] Tr. 18 [#12-2].

[85] Tr. 19 [#12-2].

[86] SSR 85–15, 1985 WL 56857.

perform any work – and thus whether she is disabled – if the claimant suffers only non-exertional limitations.[87] SSR 85-15 explains that if a claimant suffers from only non-exertional impairments, the first issue facing a hearing officer is determining "how much the person's occupational base . . . is reduced by the effects of [those] impairments."[88] The regulation further advises that in many cases, the hearing officer will need to consult a vocational resource.[89] In particularly complex cases, SSR 85-15 recommends the use of a vocational expert for this purpose.[90] Finally, SSR 85-15 states that

> [w]henever vocational resources are used and the decision is adverse to the claimant, the determination or decision will include: (1) citations of examples of occupations/jobs the person can do functionally and vocationally, and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country.[91]

Here, the hearing officer properly applied SSR 85-15. His decision cited the regulation and noted that it provided the framework for decisionmaking in the case before him.[92] Further, the hearing officer made use of a vocational resource. Indeed, he considered Olen's case complex enough to warrant the use of a vocational expert. The vocational expert testified as to whether Olen would be able to adjust and find work. He also explained that there were several jobs at which Olen could succeed.[93] Finally, the hearing officer's decision, which was adverse to Olen, included citations to examples of jobs she could perform and listed their incidence in both

---

[87] Id.

[88] Id.

[89] Id.

[90] Id.

[91] Id.

[92] Tr. 19 [#12-2].

[93] Tr. 70–75 [#12-2].

Massachusetts and the national economy.[94] In short, the hearing officer did everything required by SSR 85-15.

Olen cites a number of examples that she appears to contend demonstrate that the hearing officer failed to comply with SSR 85-15. These arguments are more naturally read, however, as an attack on the sufficiency of the evidence. First, Olen contends that the hearing officer ignored testimony of the medical expert that Olen would be unable to survive in a setting requiring interpersonal contact and instead found that Olen could work in an environment away from the broad general public but with limited contact with coworkers.

The hearing officer's findings on this matter were supported by substantial evidence. It is true that the medical expert testified that Olen would need to limit herself to occupations requiring only casual interpersonal contact and that even in that setting it was "questionable at best whether she would succeed."[95] He further stated that the record was unclear regarding how Olen would deal with a work setting involving limited social contact because all of her prior work experience had been in jobs requiring a significant social component.[96] Nevertheless, the medical expert also testified that Olen did not need to avoid all social contact at work and she could work in an environment where other people were present, so long as there was not significant social interaction.[97] Although the medical expert expressed uncertainty as to whether Olen could succeed in an environment requiring more limited social contact, he did testify about the extent of social contact Olen could be expected to endure. The hearing officer's RFC

---

[94] Tr. 19 [#12-2].

[95] Tr. 62–63 [#12-2].

[96] Tr. 65 [#12-2].

[97] Tr. 64–65 [#12-2].

14

assessment essentially adopted verbatim the limitations discussed by the medical expert.[98] Additionally, the hearing officer solicited the testimony of a vocational expert to illumine whether there were any occupations Olen could maintain with those limitations. Olen does not identify any other limitations the hearing officer should have included and those he did include are supported by substantial evidence. The hearing officer did not ignore the medical expert's testimony.

Next, Olen contends that the hearing officer erred by failing to address the impact of interruptions in Olen's ability to maintain a consistent work schedule based on the evidence of record. In essence, Olen argues that there was evidence that she was unable to sleep at night and sometimes caught up on sleep during the day, which would interrupt her work schedule. When Olen's attorney questioned the vocational expert about the effect of repeated absences, the vocational expert testified that such a condition would make an individual unemployable. The hearing officer did not include this limitation in his RFC assessment.[99]

This Court concludes that the hearing officer's decision to exclude this limitation from his RFC assessment and disregard the vocational expert's response to the hypothetical posed to him is supported by substantial evidence. In order for a vocational expert's response to a hypothetical to be relevant, the hypothetical must accurately reflect the claimant's limitations.[100] Here, Olen identifies only a single reference in her medical record related to her sleeping during the day.[101] Moreover, the medical record does not indicate how frequently Olen slept during the

---

[98] Compare Tr. 16, 18, 72–73 [#12-2], with Tr. 62–65 [#12-2].

[99] See Tr. 16–18 [#12-2].

[100] Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375–76 (1st Cir. 1982); Musto v. Halter, 135 F. Supp. 2d 220, 232–33 (D. Mass. 2001).

[101] See Tr. 813 [#12-14].

15

day or whether it caused her work-related problems. In fact, the medical record indicates that Olen's sleeping issues lessened when she was taking medication.[102] Olen testified that she was waiting for a new doctor so that she could resume her medication.[103] In addition, Olen testified that her previous jobs ended when she was accused of stealing or because the work was temporary. Olen points to no evidence in the record that she had problems attending her previous jobs due to her need to sleep. Accordingly, the hearing officer supportably found that Olen would not miss one day of work per week and disregarded the vocational expert's response to Olen's hypothetical.

Finally, Olen objects to the hearing officer's determination that she could work as a janitor and an electronics assembler. The hearing officer found that Olen had no past relevant work and no transferrable skills.[104] Despite this finding, the hearing officer adopted the vocational expert's opinion that Olen could work as a janitor, a semi-skilled position. Olen contends that it was error for the hearing officer to fail to explain how Olen would be capable of performing semi-skilled work without relevant experience or skills. Additionally, Olen asserts that the hearing officer erred when he did not explain the level of social interaction necessary to perform the work of an electronics assembler since all Olen's limitations were social.

The hearing officer's findings relating to Olen's ability to perform these jobs are supported by substantial evidence. The hearing officer's decision makes clear that he was relying on the testimony of the vocational expert.[105] At the hearing, the hearing officer told the

---

[102] Tr. 800–01 [#12-14].

[103] Tr. 36–37 [#12-2].

[104] See Tr. 18 [#12-2].

[105] Tr. 19 [#12-2].

16

vocational expert to assume that a hypothetical person was of the same age, education, and work background as Olen and had all of her limitations.[106] The vocational expert concluded that a person with this background and these limitations would be capable of performing the jobs the hearing officer included in his decision. Olen was given an opportunity to examine the vocational expert and did not question him about whether someone with Olen's background could work as a janitor, who is responsible for "emptying trash, dusting, light work."[107] Nor did she ask the expert about the social component of the electronics assembler position. Olen does not now argue that she cannot do these jobs or that there is any evidence in the record the hearing officer failed to consider. Accordingly, the only evidence of record relating to these jobs supports the conclusion that Olen is capable of performing them.

IV.  Conclusion

For the foregoing reasons, Olen's <u>Motion for Order Reversing Decision of the Commissioner</u> is DENIED and Administration's <u>Motion to Affirm the Commissioner's Decision</u> is ALLOWED.

AN ORDER HAS ISSUED.

*William L. Young*
United States District Judge

---

[106] Tr. 72–73 [#12-2].

[107] Tr. 73 [#12-2].